IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

STACEY BAILEY, )
)
Plaintiff, )
) CASE NO. 1:10-cv-1031
v. )
)
FAIRFAX COUNTY VIRGINIA )
)
Defendant. )
)

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Fairfax County Virginia's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(f). This is an employment discrimination case, where Plaintiff Ms. Stacey Bailey, a female Fairfax County Fire and Rescue Department firefighter, asserts that she was subjected to sexual harassment and a hostile work environment.

There are two issues before the Court. First, whether the Court should dismiss Plaintiff's claim for damages related to her lung injury for lack of subject matter jurisdiction, where Plaintiff already filed a claim with, and received compensation from, the Virginia Worker's Compensation Commission pursuant to the Virginia Worker's Compensation Act ("VWCA") for this injury. Second, whether the Court should strike Complaint allegations related to a video incident and her resulting lung injury

pursuant to Federal Rule of Civil Procedure 12(f) as immaterial, impertinent, and scandalous.

The Court grants Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and dismisses Plaintiff's claim for damages directly related to the lung injury because Plaintiff does not oppose Defendant's motion on this issue, and the rights and remedies that the VWCA provides to an employee exclude all other rights and remedies against an employer for a particular injury. The Court denies Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(f) because the allegations are not wholly immaterial and unrelated to Plaintiff's claims, and they do not cause Defendant significant undue prejudice.

## I. BACKGROUND

Plaintiff Ms. Stacey Bailey has been employed by the Fairfax County Fire & Rescue Department since February 2005. (Compl. ¶ 4.) Plaintiff alleges that, since she started her employment, she has been the victim of daily sexual harassment and hostility from male firefighters and superiors, and this treatment has persisted in all three of the fire stations in which she has worked. (Compl. ¶ 7.)

In September 2010, Plaintiff filed a Complaint against Defendant Fairfax County, Virginia, alleging that she was subjected to a hostile work environment based on her sex and

that she was subjected to retaliation for her complaints of sex discrimination in violation of her Constitutional right to equal protection. (Compl. ¶ 91.)

In the Complaint paragraphs at issue, paragraphs 55 through 62 and 79, Plaintiff alleges facts related to an incident in which she was told to assist the International Association of Fire Chiefs ("IAFC") with filming a training video on flammable liquids, from which Plaintiff suffered lung damage. Specifically, Plaintiff makes the following allegations:

> On September 20, 2008, the [IAFC] were [sic] filming a video regarding flammable liquids at Station 40. Bailey was paged and told to assist them. Lt. Vitor Rocha ordered her to get her gear and some extinguishers and a flare. Bailey had no prior knowledge of the flammable liquids. The video director from the IAFC told her what and how to approach the flammable liquids and what he wanted. When he had finished, she started to put on her face piece and regulator and he said, "Hey no just light it and I want you to approach from the side." Bailey said, "Let me put my face piece and regulator in and . . ." Lt. Vitor Rocha interrupted her and said, "Just light it Bailey." She said, "I will, just let me put my face piece and my regulator . . ." He interrupted her again, "Just light it Bailey." Bailey responded, "Yes, I was going to after I put my face piece and regulator in." He then walked over to Bailey. She was down on one knee getting her facepiece on. He said, "Just f***ing light it Bailey." (Compl. ¶ 55.)
> Bailey followed Lt. Rocha's orders and lit the first, second, third, fourth flammable liquids and then the fifth one didn't ignite like the others. It burned in little pools and then the flame died out. The director told Bailey where to put the flare in the liquid and gave her directions the entire time. Bailey was directly over the flare and the Bio Diesel for about 12 to 15 minutes and was getting light headed and ill. He never told her to stop- Bailey

3

stopped because she felt like she was going to fall forward and pass out. She went inside and splashed cold water on her face and got nauseated. She had diarrhea that turned to blood. She vomited until she vomited blood. As Bailey laid on the restroom floor, she was paged for another video- this one in the training room. She sat through the video and as soon as it was over she headed straight to the bathroom and had a second bout of vomit and diarrhea. Bailey realized she had to tell someone because it was not going away. She told Technician Smith Banks and then saw Lt. Rich Schaub who convinced her to go to the hospital. A medic unit from Fairfax City transported her to Fair Oaks Hospital. (Compl. ¶ 56.)

Bailey went to her internal medicine doctor two days later because she didn't feel well. She was immediately referred to pulmonologist Dr. Rennert. He informed her that she had burned her nasal passages, trachea, esophagus and lungs. She has a medium lung burn and may never recover, but they have to wait and see. He ordered a CT scan and put her on medications for lung swelling. Bailey was house-bound for a month due to being on medication that wiped out her immune system. Bailey ended up taking numerous medications during the months following the inhalation injury and will now be on medication for the rest of her life as she has chronic lung infections as a result of her injury. (Compl. ¶ 57.)

In January 2009, Bailey was transferred to a desk job at Fairfax County Training Academy. In March 2009, Bailey returned to Station 40. The first week Lt. Rocha asked to speak to her privately. They went to the EMS office where he said to her "I just want you to know that I would do nothing different. Nothing." (Compl. ¶ 58.)

Also in March 2009, Bailey's pulmonologist told her that he would like to watch the video so he could see how much she had inhaled and what exactly happened. She asked the following people for a copy of the DVD: Chief of Health and Safety and Union Secretary Daniel Gray; Hazmat Chief Craig Buckley who was present during the filming of the DVD; Fairfax County Risk Management; Captain Milton Painter, Station 40 Commander; and Jim Rist, International Association of Fire Chiefs. (Compl. ¶ 59.)

The second time Bailey called Mr. Rist, he yelled at her, "You'll never get a copy! Do you understand

4

what I'm saying? National Bio Diesel owns that! You'll never get it!" (Compl. ¶ 60.)

The next week Lt. Vitor Rocha asked, "Do you have a problem riding with me?" Bailey said "no" but after that he arranged an EOS, used sick leave, and annual leave to be off whenever Bailey was assigned to ride engine 440 when he was on it as well. He controlled her riding assignments so they were never scheduled to ride any apparatus together. (Compl. ¶ 61.)

Months later, other firefighters noticed and asked Bailey about her odd rotation that seemed to depend on where Lt. Rocha was riding. Firefighter Carlton Yancey said, "Hey uh, I don't want to cause any problems in case you haven't noticed, but uh, have you noticed you f***ed up rotation? Why doesn't Vitor want to ride with you? What is up with that sh**? [sic] Girl you need to say something! You can't let them bully you!" (Compl. ¶ 62.)

On September 25, 2009, Bailey was paged to the Captain's Office. Chief Duke gave her an edited DVD copy of her lighting flammable liquids at Station 40. They were in Captain Nash's office. Captain Nash looked incredibly uncomfortable. She first asked for a copy of the DVD in March 2009. The DVD they gave her had no sound, so you couldn't hear the director yelling at her and telling her what to do or how he wanted her to approach and light fluids. There was also no footage of them telling Bailey not to wear her face piece or regulator. It was edited, not raw footage. However, the video clearly showed Bailey's face directly over the fuel and the smoke going directly in her face. It also showed her face piece dragging on the ground beside her as she was told to move closer and closer to light the far end of the pan of fuel. (Compl. ¶79.)

As a result of this lung injury, an Employer's Accident Report documenting the September 22, 2008 injury as a compensable injury covered by the VWCA was submitted to the Virginia Worker's Compensation Commission ("VWCC"). The County agreed that the lung injury was compensable pursuant to the VWCA and submitted an Agreement to Pay

5

Benefits to the VWCC. The VWCC approved the agreement and awarded Plaintiff compensation in the form of lifetime medical benefits and payment of weekly wages for Bailey's temporary total disability.

On September 15, 2010, Plaintiff filed her Complaint in this action. In her Complaint, Plaintiff claims that, Defendant violated 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment, from which she has suffered, and continues to suffer, pain and mental anguish, curtailment of career opportunities, personal and professional humiliation, emotional distress, and permanent damages to her lungs. (Compl. ¶ 91 & 92.)
In her prayer for relief, Plaintiff requests compensatory damages, punitive damages, injunctive relief, and costs and fees. Notably, Plaintiff specifically requests that the Court award her $2,000,000 compensatory damages for the mental and physical stress related to her lung injury.

On or about October 7, 2010, Defendant filed the present Motion to Dismiss, requesting that the Court dismiss Plaintiff's claim for damages related to her lung injury and strike Complaint paragraphs 55, 56, 57, 58, 59, 60, 61, 62, and 79 that contain allegations relating to the video incident and lung injury. Plaintiff does not oppose Defendant's motion to dismiss her claim for damages related

6

to the lung injury, so the Court will not address this issue below. Plaintiff does oppose Defendant's request that the Court strike Complaint allegations related to the video incident and lung injury.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) permits the court, on its own or on motion of either party, to strike "from any pleading any insufficient defense or redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion falls within the discretion of the district court. *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09cv123, 2009 WL 2160451, at * 4 (E.D. Va. July 17, 2009) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3d ed. 2004)); *Xerox Corp. v. ImaTek, Inc.*, 220 F.R.D. 241, 243 (D. Md. 2003). Rule 12(f) motions are generally viewed with disfavor and infrequently granted "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (2d ed. 1990)); *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Va. Intern. Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995). Thus, a motion to strike "should be denied unless the challenged

allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *GTSI Corp.*, 2009 WL 2160451, at *4 (E.D. Va. 2009) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)).

## III. ANALYSIS

The Court denies Defendant's motion to strike the allegations related to the video incident and resulting lung injury pursuant to Federal Rule of Civil Procedure 12(f) because the allegations are relevant to Plaintiff's hostile work environment claim and do not significantly prejudice Defendant.

To establish a hostile work environment claim, an employee must show that: (1) she was harassed "because of" her "sex"; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Miller v. Washington Workplace, Inc.*, 298 F. Supp. 2d 364, 374 (E.D. Va. 2004). To determine whether the harassment was sufficiently severe or pervasive, a court must look at all of the circumstances to determine whether a work environment is hostile or abusive, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive

utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Smith v. First Union National Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).

The Court denies Defendant's request to strike the paragraphs at issue because they contain allegations relevant to Plaintiff's hostile work environment claim on both liability and damages, and the allegations are not such that they will cause Defendant significant undue prejudice. With respect to the issue of liability, courts look to the totality of the circumstances in reviewing claims for hostile work environment, including whether conduct is physically threatening or humiliating. The paragraphs at issue, which allege conduct that is both physically threatening and humiliating, are relevant to whether the harassment was sufficiently severe to alter the conditions of Plaintiff's work environment. Further, these allegations are relevant to the issue of damages because Plaintiff is claiming damages for the fear she experienced after one of her alleged harassers, someone upon whom she should be able to rely in dangerous situations, ordered her to expose herself to danger without proper protective gear. Finally, with respect to the issue of prejudice, the Court is not persuaded by Defendant's arguments that (1) the allegations are so scandalous that they will cause Defendant unfair prejudice, and (2) the Complaint contains numerous other allegations in support of

Plaintiff's claim, such that these allegations are rendered immaterial. As discussed above, these allegations are probative of Plaintiff's claims and are not improperly scandalous merely because they describe shocking conduct. In addition, these allegations are not rendered immaterial merely by the fact that Plaintiff has numerous other allegations in support of her claims. Therefore, the Court denies Defendant's Motion to Strike the paragraphs containing allegations related to the video incident and lung injury.

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff's claim for damages directly related to her lung injury and denies Defendant's request to strike Complaint allegations related to the video incident and resulting lung injury.

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, the Court GRANTS Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and dismisses Plaintiff's claim for damages in the amount of $2,000,000 for the mental and physical stress related to the lung injury. The Court DENIES Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(f).

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ____ day of December, 2010.

Alexandria, Virginia

12/4/2010

/s/
Gerald Bruce Lee
United States District Judge